22.     The largest number of people present were those observing and photographing or video-recording the demonstrators and observing, photographing and video-recording the police.

23.     The police stood by and observed as the 1st Amendment activity took place until, at or about 2:00 PM, NYPD supervisor DOEs 1 and 2 decided to interfere with and terminate the lawful 1st Amendment activity.

24.     Police proceeded to create and increase congestion on the sidewalk area giving rise to this action.

25.     Police, including Defendant WINSKI, began by giving orders which would with reasonable foreseeability create congestion.

26.     Observers who were not on the sidewalk, watching from nearby, were ordered to get on the sidewalk.

27.     Police themselves flooded the sidewalk.

28.     Police proceeded down the sidewalk in a southerly direction to further hem in the demonstrators and add to the congestion.

29.     The police thereby created and increased congestion on the sidewalk.

30.     The police then gave a dispersal order to clear the sidewalk, in contradiction to their previous orders to get on the sidewalk.

31.     Some demonstrators chose not to obey the unlawful dispersal order.

32. Groups of police, including Defendants WINSKI and DOES 3-6, proceeded in small groups of 3 or more officers at a time, to violently attack and arrest civilian pedestrians using excessive force which would with reasonable foreseeability cause demonstrators and observers to gather around and congest the sidewalks further while expressing anger verbally.

33. NYPD police officers, including Defendants 3-8, rioted on the sidewalk, as described above.

34. NYPD supervisor officers, including Defendants WINSKI and DOES 1-2, were personally present, approved of, directed, and failed to prevent, the unlawful activity of individual officers described above.

35. At or about 2:25 pm, police officers were arresting one of the demonstrators.

36. Among other observers, Plaintiff approached to observe the arrest.

37. Defendant WINSKI approached Plaintiff and proceeded to arrest him using excessive force, including an unlawful choke hold.

38. Defendant DOES 3-6 assisted Defendant WINSKI, using excessive force, twisting Plaintiffs arm behind his back and raising it to his shoulder blades.

39. At or about 2:30 PM Defendants WINSKI, VIVIANO and DOES 3-6 seized and arrested Plaintiff.

40.     The Defendants lacked probable cause to believe that Plaintiff was violating a lawful order to disperse, as set forth hereinabove.

41.     Defendants WINSKI and VIVIANO falsely reported that Plaintiff had engaged in criminal conduct, which foreseeably caused him to be held in custody following his arrest until such time as he was arraigned and released.

42.     Defendants WINSKI and VIVIANO thereafter filed falsified reports which foreseeably caused him to be criminally prosecuted without probable cause, and causing him to have to appear repeatedly in court to defend himself against the false charges.

43.     The criminal charges against Plaintiff were later dismissed.

Plaintiff's Coerced Inner Eye Search

44.     On or about 11 AM, March 18, 2012, 23 hours after his arrest, all necessary steps had been taken to prepare Plaintiff for arraignment.

45.     At that time, but before he had been arraigned, Defendant DOE 7 stated to Plaintiff that if he refused to submit to a infra-red search and photographic scan of his inner eye (an "Iris Scan"), he would not be arraigned.

46.     Plaintiff refused the Iris Scan.

47.     Thereafter, Plaintiff was detained in custody for another 15 hours.

48.     At that time, Plaintiff was arraigned and released.

49.     The Iris Scan was unnecessary for Plaintiff's arraignment.

50. The Iris Scan equipment instantly generated a digital record of a successful photograph of the iris patterns located at the middle of the human eye.

51. The Iris Scan equipment immediately filed the above digital record in an NYPD database following a successful photograph.

52. No statute authorized the NYPD to take Iris Scans.

53. No statute limited the dissemination of Iris Scan photographs by the NYPD.

54. The NYPD Iris Scan program, which was an official, written, NYPD policy, directed police, including Defendant DOE 7, to attempt to obtain an Iris Scan from every jail detainee, including arrestees such as Defendant, who had not been charged with a serious felony crime.

55. The NYPD Iris Scan program was not practical for use in the New York City jails.

56. The NYPD Iris Scan program could not obtain photographs from prisoners who were deliberately uncooperative.

57. The NYPD Iris Scan program could not obtain photographs from prisoners who needed, or had received, cataracts or cataract correction surgery.

58. The NYPD Iris Scan program could not obtain photographs from prisoners who lacked sleep.

11

59. The NYPD Iris Scan program could not obtain photographs from prisoners who were under the influence of prescription medications.

60. The NYPD Iris Scan program could not obtain photographs from prisoners who were under the influence of illicit drugs.

61. The NYPD Iris Scan program could not obtain photographs from prisoners wearing glasses.

62. The NYPD Iris Scan program could not obtain photographs from prisoners wearing contact lenses.

63. The purchase of NYPD Iris Scan equipment was not approved by the New York City Council.

64. New York CPL 140.20(1) provides that the NYPD is barred from prolonging pre-arraignment detention for even one hour after all steps necessary to arraignment have been taken.

65. US Constitution Amendment 14 and New York State Constitution Article 1, Section 6 bar deprivation of liberty without due process of law.

Criminal Prosecution

66. Thereafter, the Defendants caused knowingly false criminal charges to be filed against Plaintiff, which required him to make court appearances or remain subject to court jurisdiction and to an order to appear in connection with those charges for a period of months subsequent to arraignment and prior to their

ultimate dismissal, but which resulted in termination of the charges favorable to the Plaintiff.

67. The criminal charges were maliciously initiated by Defendants without probable cause, knowing them to be false; in retaliation against the Plaintiff for his exercise of First Amendment rights; for his failure to obey NYPD officer orders with the level of respect and subservience Defendants felt he should show; and for his political views.

## City Policy

68. Defendant CITY OF NEW YORK, through its preparation and issuance of both formal and informal orders and directives, and through its formal and informal monitoring of officer activities, both mandated and was aware of the false arrests of persons engaged in First Amendment activity in the public spaces of New York City, such as Plaintiff herein, and both caused, and failed to take sufficient steps to prevent, unlawful stops, searches, arrests, use of excessive force, and imprisonments, including that of Plaintiff as set forth herein.

69. Defendant CITY OF N EW YORK, through its preparation and issuance of both formal and informal orders and directives, and through its formal and informal monitoring of officer activities, both mandated and was aware of the its own policy to suppress 1st Amendment activity in public spaces,

13

and failed to take sufficient steps to prevent, unlawful arrests and imprisonments, the use of excessive force, the destruction of private property, and the interference with citizens' rights under the U.S. Constitution 1st and 4th amendments, including those of the Plaintiff as set forth hereinabove.

70. Defendant CITY OF NEW YORK instituted and maintained a policy by NYPD whereby its officer employees would conceal their own identities and the identities of fellow officers directly participating in arrests and uses of force by

(A) ordering arrests, making arrests, and using force during arrests, without filing reports or leaving any public record of their own identity, or the identities of fellow officers participating directly in such arrests and uses of force;

(B) concealing one another's identities by obstructing, intimidating, and arresting bystanders, including Plaintiff, attempting to photograph or video-record arrests and uses of force by fellow officers; and

(C) concealing one another's identities by falsely claiming not to remember the identities of involved officers, and by falsely claiming not to recognize fellow involved officers depicted in video and photographic records such as those attached as exhibits hereto.

71. The CITY OF NEW YORK was also aware, or should have also been