UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DALLAS PESOLA,

Plaintiffs,

-against-

THE CITY OF NEW YORK, NYPD DEPUTY
INSPECTOR EDWARD WINSKI, NYPD
LIEUTENANT FRANK VIVIANO, Patrol Boro
Manhattan South Task Force, and NYPD Officer DOES
1-7,

Defendants,

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

***ZACHARY CARTER***
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y. 10007*


*Of Counsel Suzanne Aribakan; Andrew Lucas;*
*Joy Anakhu*
*Tel: (212) 356-2373*
*Matter No. 2015-018629*

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF RELEVANT ALLEGED FACTS........................................................ 2

STANDARD OF REVIEW ................................................................................................ 3

ARGUMENT ...................................................................................................................... 4

PLAINTIFF HAS NOT ARTICULATED A PLAUSIBLE
VIOLATION OF HIS FIRST, FOURTH, OR
FOURTEENTH AMENDMENT RIGHTS                    4

    A.   THE FALSE ARREST CLAIM FAILS...............................................5

    B.  PLAINTIFF   FAILS   TO   STATE   A
PLAUSIBLE      FIRST      AMENDMENT
RETALIATION CLAIM ...........................................................................10

    C.  PLAINTIFF   FAILS   TO   ALLEGE   a
PLAUSIBLE Excessive Force CLAIM ....................................................11

    D.  THE      PURPORTED    MALICIOUS
PROSECUTION CLAIM FAILS ..............................................................13

    E.  THE PURPORTED 14TH AMENDMENT
DUE PROCESS CLAIM FAILS ..............................................................16

    F.  THE   PURPORTED   FABRICATION   OF
EVIDENCE CLAIM FAILS......................................................................18

DEFENDANTS DEPUTY INSPECTOR WINSKI AND
LIEUTENANT VIVIANO ARE ENTITLED TO
QUALIFIED IMMUNITY                    20

PLAINTIFF'S MUNICIPAL LIABILITY CLAIM FAILS
AS A MATTER OF LAW                    22

CONCLUSION................................................................................................................. 25

# TABLE OF AUTHORITIES

## Cases

Acosta v. City of N.Y., 2012 U.S. Dist. LEXIS 60460, (S.D.N.Y. Apr. 26, 2012)......................16

Ashcroft v. Iqbal, 556 U.S. 662 (U.S. 2009) ....................................................................... passim

Bell Atlantic v. Twombly, 550 U.S. 544 (2007)....................................................................3, 29

Benjamin v. Flores, 2012 U.S. Dist. LEXIS 152248 (E.D.N.Y. Oct. 23, 2012) ..........................15

Bery v. City of New York, 97 F.3d 689 (2d Cir. 1996)................................................................10

Blair v. City of New York, et al., 2009 U.S. Dist. LEXIS 29300 (E.D.N.Y. Mar.

    31, 2009) .........................................................................................................................24

Board of Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397 (1997) ..............................................30

Brown v. City of New York, 2015 U.S. App. LEXIS 14517 (2d Cir. Aug. 19,

    2015) ..............................................................................................................................22

Brown v. City of New York, 2014 U.S. Dist. LEXIS 83513 (S.D.N.Y. 2014)............................10

Brown v. City of New York, 2014 U.S. Dist. LEXIS 181736 (E.D.N.Y. Dec. 23,

    2014) ..............................................................................................................................24

Bryant v. City of New York, 404 F.3d 128 (2d Cir. 2005)....................................................21, 22

C.G. v. City of New York, 2013 U.S. Dist. LEXIS 153020 (E.D.N.Y. 2013) .............................10

Chambers v. Time Warner, Inc., 282 F.3d 147 (2d Cir. 2002).......................................................3

Cofone v. Manson, 594 F.2d 934 (2d Cir. 1979)........................................................................23

Concerned Jewish Youth v. McGuire, 621 F.2d 471 (2d Cir. 1980)............................................11

Connick v. Thompson, 131 S. Ct. 1350 (2011)...........................................................................30

Crenshaw v. City of Mount Vernon, 372 F. App'x. 202  (2d Cir. 2010) ....................................11

Decker v. Campus, 981 F. Supp. 851 (S.D.N.Y. 1997).................................................................7

Devenpeck v. Alford, 543 U.S. 146 (2004) ..................................................................................6

Esmont v. City of New York, 371 F.Supp. 2d 202 (E.D.N.Y. 2005) ...........................................14

Fabrikant v. French, 691 F.3d 193 (2d Cir. 2012) ......................................................................13

Faruki v. City of New York, 2012 U.S. Dist. LEXIS 47310  (S.D.N.Y. Mar. 30,

    2012) ...........................................................................................................................4, 14

Garcia v. Bloomberg, 865 F.Supp.2d 478 (S.D.N.Y. 2012).......................................................28

Garcia v. Doe, 779 F.3d 84 (2d Cir. 2014) ....................................................................4, 25, 26

Gerstein v. Pugh, 420 U.S. 103 (1975).......................................................................................20

Golino v. City of New Haven, 950 F.2d 864 (2d Cir. 1991) ........................................27

Graham v. Connor, 490 U.S. 386 (1989); ...........................................................14, 25

Hendrix v. City of New York, 2013 U.S. Dist. LEXIS 179259 (E.D.N.Y. Dec.
    20, 2013) ....................................................................................................31

Higginbotham v. City of New York, 2015 U.S. Dist. LEXIS 62227 (S.D.N.Y.
    May 12, 2015) ..............................................................................................29

Horvath v. City of New York, 2015 U.S. Dist. LEXIS 51029 (E.D.N.Y. Apr. 17,
    2015) ..........................................................................................................24

Hunter v. Bryant, 502 U.S. 224 (1991)................................................................25

Jackson v. County of Rockland, 450 Fed. Appx. 15 (2d Cir. 2011)............................11

Jaegly v. Couch, 439 F.3d 149 (2d Cir. 2006); .................................................6, 17

Johnson v. City of New York, 2008 U.S. Dist. LEXIS 78984 (S.D.N.Y 2008)............10

Johnson v. Glick, 481 F.2d 1028 (2d Cir. 1973)). ...............................................14

Kerman v. City of New York, 261 F.3d 229 (2d Cir. 2001)....................................14

Kirch v. Liberty Media Corp., 449 F.3d 388 (2d Cir. 2006) ..................................11

Kuck v. Danaher, 600 F.3d 159 (2d Cir. 2010) .............................................13, 21

Lebowitz v. City of New York,  606 Fed. App'x. 17 (2d Cir. 2015) .....................20, 21

Lennon v. Miller, 66 F.3d 416 (2d Cir. 1995) ....................................................10

Locurto v. Safir, 264 F.3d 154 (2d Cir. 2001) ....................................................20

Los Angeles v. Heller, 47 U.S. 796 (1986)..........................................................30

Lowth v. Town of Cheektowaga, 82 F.3d 563 (2d Cir. 1996)..................................17

Malley v. Briggs, 475 U.S. 335 (1986)...............................................................25

Manganiello v. City of New York, 612 F.3d 149 (2d Cir. 2010). .......................17, 20

Marcavage v. City of New York, 689 F.3d 98 (2d Cir. 2012)........................5, 6, 7, 10

Mastrovincenzo v. City of New York, 435 F.3d 78 (2d Cir. 2006)............................11

McAllister v. N.Y.C. Police Dep't, 49 F. Supp. 2d 688 (S.D.N.Y. 1999) ..................15

Monell v. Department of Social Services, 436 U.S. 658 (1978) .................27, 28, 29, 30

Morales v. City of New York, 752 F.3d 234 (2d Cir. 2014) ....................................19

Murphy v. Lynn, 118 F.3d 938 (2d Cir. 1997)....................................................17

Papineau v. Parmley, 465 F.3d 46 (2d Cir. 2006)................................................13

Powell v. Nevada, 511 U.S. 79 (1994) ...............................................................21

Pugliese v. Nelson, 617 F.2d 916 (2d Cir. 1980)........................................................23

Ragland v. City of Mount Vernon, 2013 U.S. Dist. LEXIS 114945 (S.D.N.Y. July
    12, 2013) ...........................................................................................................15

Rincon v. City of New York, 2005 U.S. Dist. LEXIS 4335 (S.D.N.Y. 2005) ............14

Riverside v. McLaughlin, 500 U.S. 44 (1991).............................................................21

Rohman v. New York City Transit Auth., 215 F.3d 208 (2d Cir. 2000)......................18

Romano v. Howarth, 998 F.2d 101 (2d Cir. 1993) .....................................................15

Rothstein v. Carriere, 373 F.3d 275 (2d Cir. 2004) ...................................................18

Roundtree v. City of New York, 778 F. Supp. 614 (E.D.N.Y. 1991)...........................16

Santulli v. Russelo, 519 Fed App'x. 706 (2d Cir. 2013) ............................................13

Scott v. Harris, 550 U.S. 372 (U.S. 2007) ...................................................................5

Singer v. Fulton County, 63 F.3d 110 (2d Cir. 1995) ...................................................7

Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236 (2d. Cir.2002)......................12

Townes v. City of New York, 176 F.3d 138, 147 (2d Cir. 1999), cert. denied, 528
    U.S. 964 (1999)................................................................................................18

Tracy v. Freshwater, 623 F.3d. 90 (2d Cir. 2010) ......................................................14

U.S. v. Nelson, 500 Fed. Appx. 90 (2d Cir. 2012) ........................................................8

United States v. Nelson, 2011 U.S. Dist. LEXIS 36483 (S.D.N.Y. Mar. 30, 2011)
    (PKC) ..................................................................................................................6

United States v. Walsh, 194 F.3d 37 (2d Cir. 1999)....................................................14

Vasquez v. City of New York, 2014 U.S. Dist. LEXIS 157259 (S.D.N.Y. Nov.
    6, 2014)..............................................................................................................30

Watson v. City of New York, 92 F.3d 31 (2d Cir. 1996) .............................................22

Weaver v. City of New York, 2011 U.S. Dist. LEXIS 121322 (S.D.N.Y. Oct.18,
    2011) .................................................................................................................19

Williams v. City of New York, 2003 U.S. Dist. LEXIS 19078 (S.D.N.Y. Oct.
    23, 2003) ...........................................................................................................19

Wims v. N.Y.C. Police Dep't, 2011 U.S. Dist. LEXIS 78641 (S.D.N.Y. July 20,
    2011) .................................................................................................................16

Zahrey v. Coffey, 221 F.3d 342 (2d Cir.2000) ...........................................................23

Zellner v. Summerlin, 494 F.3d 344 (2d Cir. 2007) ......................................................6

**Statutes**

42 U.S.C. § 1983 ...................................................................................................................1

42 U.S.C. §1983 .................................................................................................................22

Fed. R. Civ. P. 12(b)(6)........................................................................................................3

Fed. R. Civ. P. 8 ..................................................................................................................3

New York City Charter §435(a) .......................................................................................7, 8

NY § PL 195.05 ...................................................................................................................8

NY CPL § 140.20 (1)..........................................................................................................18

NY PL § 240.20 (6) ....................................................................................................6, 7, 10

NY PL § 240.20 (5) ....................................................................................................6, 7, 10

Defendants City of New York, Deputy Inspector Edward Winski and Lieutenant Frank Viviano (collectively referred to herein as the "City Defendants") by their attorney Zachary Carter, Corporation Counsel of the City of New York, hereby submit this Memorandum of Law in support of their motion to dismiss the Complaint dated March 12, 2015, with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiff Dallas Pesola brings this action pursuant to 42 U.S.C. § 1983 against the City Defendants for the alleged deprivation of his First, Fourth and Fourteenth Amendment rights. The purported Constitutional violations stem from an arrest on March 17, 2012, when plaintiff failed to comply with lawful police orders to disperse from a sidewalk near Zuccotti Park.

The City Defendants now move to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that: (i) Deputy Inspector Winski and Lieutenant Viviano had probable cause to believe plaintiff's conduct violated New York's Penal Law statute at the time of plaintiff's arrest; (ii) the facts do not plausibly suggest that Deputy Inspector Winski and Lieutenant Viviano maliciously prosecuted plaintiff; (iii) the Complaint does not plausibly plead an excessive force claim; (iv) the allegations in the Complaint undercut any deprivation of a due process claim as plaintiff admits he was promptly arraigned and the Complaint does not plead facts that suggest any claim related to a purported iris scan; (v) the fabricated evidence claim fails as pled; and (vi) plaintiff fails to allege a pattern or practice that could give rise to municipal liability.

## STATEMENT OF RELEVANT ALLEGED FACTS

Plaintiff alleges that on the afternoon of March 17, 2012, at approximately 2:30 pm, he was on the sidewalk near the vicinity of Zuccotti Park observing and participating in a protest. <u>See</u> Complaint ("Compl."), at ¶¶ 15, 17-18, annexed to the Declaration of Andrew J. Lucas as Exhibit "A." According to the Complaint, on the subject afternoon, a number of police, protestors and observers were present at the protest. <u>Id</u>. at ¶¶ 21-22. During the demonstration, officers, including Inspector Edward Winski gave orders to the crowd. <u>Id</u>. at ¶ 25. Plaintiff avers that individuals who were not on the sidewalk were ordered onto the sidewalk by police. <u>Id</u>. at ¶ 26. As the afternoon progressed, plaintiff contends that officers gave orders for everyone to clear the sidewalk. <u>Id</u>. at ¶ 30. Plaintiff admits that some demonstrators chose to disobey these orders. <u>Id</u>. at ¶ 31. After the officers' orders to disperse were given, plaintiff observed an individual being placed under arrest. <u>Id</u>. at ¶¶ 35-36. Plaintiff approached to observe the arrest. <u>Id</u>. at ¶ 36. The Complaint alleges that Inspector Winski and Lieutenant Viviano then arrested plaintiff. <u>Id</u>. at ¶¶ 37, 39. The Complaint admits that plaintiff was on the sidewalk when the officers arrested plaintiff. <u>Id</u>. at ¶ 15. The Complaint further alleges that Deputy Inspector Winski purportedly used excessive force on plaintiff during the arrest by way of placing plaintiff's arm behind his back and raising it to his shoulder blades. <u>Id</u>. at ¶¶ 37-38.

On the next morning after the arrest, on March 18, 2012, while in custody and awaiting arraignment, the Complaint alleges that plaintiff refused to submit to an infra-red search and photographic scan of his eye (the "Iris Scan"). <u>Id</u>. at ¶¶ 44-46. Plaintiff claims he was in custody for a total of 38 hours. <u>Id</u>. at ¶¶ 44, 47. Plaintiff alleges that after he refused to submit to the Iris Scan, he was arraigned and released. <u>Id</u>. at ¶¶ 45-48. According to the Complaint, the City Defendants knowingly filed false criminal charges against plaintiff in retaliation against him

for his failure to obey officer orders and in retaliation for his political views. <u>Id</u>. at ¶¶ 66-67. The criminal charges were ultimately dismissed. <u>Id</u>.at ¶ 43.

## STANDARD OF REVIEW

In deciding a motion to dismiss, the reviewing court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *Fed. R. Civ. P.* 12(b)(6). However, the requirement that the court accept as true all allegations in the complaint when deciding a motion to dismiss is inapplicable to threadbare recitals of the elements of a cause of action couched as factual allegations. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 1950 (2009) (*citing Fed. R. Civ. P.* 8). A complaint may be dismissed pursuant to Rule 12(b)(6) where it fails to plead "enough facts to state a claim to relief that is plausible on its face." <u>See</u> <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544, 570, 127 S. Ct. 1955, 1975 (2007).

In deciding a motion to dismiss, "a court may consider documents attached to the complaint as an exhibit or incorporated in it by reference, ... matters of which judicial notice may be taken, or ... documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.'" <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 153 (2d Cir. 2002). Evaluating the sufficiency of a complaint is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Ashcroft v. Iqbal</u>, *supra,* 556 U.S. at 679. The Court may and should disregard "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." <u>Id</u>. at 663. After examining the remaining factual matter, if "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' – 'that the pleader is entitled to relief.'" <u>Id</u>. at 679 (*quoting Fed. R. Civ. P.* 8(a)).

Viewing facts in the light most favorable to the non-moving party is prescribed to material facts that are in genuine dispute. A non-determinative issue of fact will not defeat a motion, and neither will reliance on demonstrably false assertions by the non-moving party. This is no less true in assessing a complaint that has incorporated video. "[W]e take as true the facts set forth in the complaint, [] to the extent they are not contradicted by the video evidence." Garcia v. Doe, 779 F.3d 84, 87-88 (2d Cir. 2015) (citations omitted); see also, Faruki v. City of New York, 10 Civ. 9614 (LAP), 2012 U.S. Dist. LEXIS 47310, at *14 (S.D.N.Y. Mar. 30, 2012) ("Furthermore, the store owners can be heard on the audio tape of the third 911 call asking Plaintiff to leave the store… Plaintiff's claim that the owners never asked her to leave the store is contradicted by the incontrovertible record[.]") aff'd, 517 Fed. Appx. 1, 2 (2d Cir. 2013); Marcavage v. City of New York, 689 F.3d 98, 110 (2d Cir. 2012) (disregarding plaintiffs stated version of events where it is contradicted by an audio recording); Scott v. Harris, 550 U.S. 372, 380 (U.S. 2007).

## ARGUMENT

### PLAINTIFF HAS NOT ARTICULATED A PLAUSIBLE VIOLATION OF HIS FIRST, FOURTH, OR FOURTEENTH AMENDMENT RIGHTS

Plaintiff's first cause of action states that his First, Fourth and Fourteenth Amendment rights were violated when: (A) Deputy Inspector Winski and Lieutenant Viviano purportedly arrested plaintiff without probable cause; (B) Deputy Inspector Winski and Lieutenant Viviano retaliated against plaintiff for his exercise of First Amendment Rights; (C) Deputy Inspector Winski allegedly used excessive force on plaintiff during the arrest by placing plaintiff's arm behind his back and raising it to his shoulder blades; (D) Deputy Inspector Winski and Lieutenant Viviano maliciously prosecuted plaintiff by filing false criminal charges against plaintiff; and (E) plaintiff was deprived of due process of law when his

pre-arraignment detention was prolonged after he refused to submit to an iris scan; and (F) Deputy Inspector Winski and Lieutenant Viviano fabricated evidence which caused him to repeatedly appear in court to defend himself.  See Compl., at ¶¶ 15-40; 37-38; 41-42; 44-48; 66-68; 37-38; 77-80. As discussed in more detail below, because the Complaint is replete with conclusory labels and devoid of any plausible allegation that tends to suggest that Deputy Inspector Winski and/or Lieutenant Viviano violated any of plaintiff's Constitutional rights, plaintiff's first cause of action necessarily fails *in toto*.

### A.  THE FALSE ARREST CLAIM FAILS

Plaintiff does not state a plausible false arrest claim because probable cause existed for his arrest. Where there is probable cause to arrest for any offense, charged or not, a false arrest claim is subject to dismissal.  Marcavage v. City of New York, 689 F.3d 98, 110 (2d Cir. 2012); *citing* Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006); see also Devenpeck v. Alford, 543 U.S. 146, 153-54 (2004); Zellner v. Summerlin, 494 F.3d 344, 369 (2d Cir. 2007). "Probable cause exists where the arresting officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." United States v. Nelson, 10 Cr. 414(PKC), 2011 U.S. Dist. LEXIS 36483, at *8-9 (S.D.N.Y. Mar. 30, 2011) (PKC) (internal quotations and citations omitted).

To determine the existence of probable cause, the court "must examine the totality of the circumstances of a given arrest . . . . These circumstances must be considered from the perspective of a reasonable police officer in light of his training and experience." Id. (citations omitted). Where there is probable cause to arrest for any offense a false arrest claim is subject to dismissal.  Marcavage v. City of New York, 689 F.3d 98, 110 (2d Cir. 2012). Probable cause is

an objective test, and any alleged alternative motives by defendants are wholly inconsequential. See Singer v. Fulton County, 63 F.3d 110, 118 (2d Cir. 1995) ("[M]otivation is not a consideration in assessing probable cause."). Finally, where the arresting officer has probable cause, the confinement is otherwise privileged, and "the individual has no constitutional or statutory claim against the officer who made the arrest." Decker v. Campus, 981 F. Supp. 851, 856 (S.D.N.Y. 1997). Here, the facts set forth in the Complaint suggest Deputy Inspector Winski and Lieutenant Viviano had probable cause to believe plaintiff's conduct violated NY PL §§ 240.20 (5) and 240.20 (6) at the time of plaintiff's arrest, as set forth below.

Section 240.20 (5) of the New York Penal Code provides, in relevant part, that a person is guilty of disorderly conduct when, "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof: [h]e obstructs pedestrian or vehicular traffic." In addition, the facts alleged in the Complaint shows that Deputy Inspector Winski and Lieutenant Viviano had probable cause to believe plaintiff's conduct violated NY PL § 240.20 (6) by congregating with other protestors in a public place and refusing to comply with a lawful order to disperse. Pursuant to NY PL § 240.20 (6), an individual is guilty of disorderly conduct when "[h]e congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse." Moreover, "[u]nder New York's disorderly conduct statute, an order to disperse is lawful unless the order was purely arbitrary and not calculated in any way to promote the public order." U.S. v. Nelson, 500 Fed. Appx. 90, 93 (2d Cir. 2012) (quotations omitted).

Here, the facts set forth in the Complaint show that plaintiff violated NY PL §§ 240.20 (5) & (6), and was, in turn, arrested as a result thereof. In particular, the Complaint concedes that after officers gave dispersal orders to clear the sidewalk, plaintiff remained on the

sidewalk, despite police orders. <u>See</u> Compl., at ¶¶ 15, 35-36 (emphasis supplied). Rather than disperse, he approached and observed an individual being placed under arrest. <u>Id</u>. Plaintiff admits he was <u>on</u> the sidewalk at the time he was arrested and not even attempting to disperse. <u>Id</u>. at ¶ 15. (emphasis supplied*).*

In addition, the exhibits attached to plaintiff's Complaint establish, still-by-still, that the area was congested and that plaintiff still disobeyed police officers' lawful orders to disperse a sidewalk in violation of NY PL §§ 240.20 (5) & (6). <u>See</u> Compl., at pp. 24-27. Specifically, in plaintiff's exhibits "1" and "2," Defendant Winski visibly communicates with a bullhorn to protestors on the sidewalk to disperse the sidewalk. <u>Id</u>. at p. 24. Exhibits "5" and "6," capture a chaotic environment where officers and a crowd of protestors are on the sidewalk. <u>Id</u>. at p. 26. Plaintiff's exhibits "7" and "8," show a large crowd of protestors who are standing shoulder-to-shoulder, who are in effect, obstructing pedestrian traffic, and an officer attempting to arrest an individual, who plaintiff identifies as himself, and who is on the sidewalk. <u>Id</u>. at p. 27.

Moreover, the allegations in the Complaint and the exhibits attached thereto, show that plaintiff obstructed governmental administration, *inter alia*, by interfering with the officers' more general duties under New York City Charter §435(a). The charter states, in relevant part, "the police department and force shall have the power and it shall be their duty to…preserve order at…all public meetings and assemblages…regulate, direct, control and restrict the movement of vehicular and pedestrian traffic for the facilitation of traffic and the convenience of the public…" <u>Id</u>.

Here, as discussed above, the facts in their totality establish the following: on the afternoon of March 17, 2012, officers were performing an essential governmental function of

regulating pedestrian traffic while an active demonstration was in progress. The stills attached to the Complaint show that a large crowd was standing shoulder-to-shoulder at the demonstration. Id. at p. 27. The officers gave protestors dispersal orders and protestors disobeyed those lawful orders. Id. at ¶¶ 15, 35-36.   After the officers had given the crowd of demonstrators dispersal orders, plaintiff opted to forego the orders and remained on the sidewalk. Ibid.  Plaintiff did so despite the fact that officers were clearly visible, concededly audible, and actively attempting to clear the sidewalk.  See Compl., at ¶¶15, 35-36,  pp. 24-27.

Plaintiff cannot deny that this form of regulation falls squarely under §435(a) of the New York City Charter. Officers at the demonstration had the lawful ability to facilitate the flow of pedestrian traffic so as to maintain a congestion-free sidewalk. Additionally, both the Complaint and the exhibits thereto clearly show that plaintiff disobeyed the officers' attempts to maintain a congestion-free sidewalk. Further, any argument that his physical actions were not enough to effectively interfere and hamper officers' efforts is without merit. As noted in this Circuit, plaintiff's mere refusal to comply was enough to establish probable cause for OGA. See NY § PL 195.05, See Brown v. City of New York, 2014 U.S. Dist. LEXIS 83513, at *21 (S.D.N.Y. 2014) citing C.G. v. City of New York, 2013 U.S. Dist. LEXIS 153020 (E.D.N.Y. 2013) (Refusing to obey orders to leave the area can be the basis for an arrest for obstructing governmental administration); Marcavage v. City of New York, 2010 U.S. Dist. LEXIS 107724, at *30 (S.D.N.Y. 2010) (finding probable cause for OGA where officers, carrying out a governmental function of regulating pedestrian traffic during a demonstration, ordered plaintiffs to leave the area numerous times before their arrest); Johnson v. City of New York, 2008 U.S. Dist. LEXIS 78984 at *10 (S.D.N.Y 2008) ("an officer has probable cause to arrest for obstructing governmental administration where a person refuses to comply with an order from a

police officer"); <u>see also</u> <u>Lennon v. Miller</u>, 66 F.3d 416, 424 (2d Cir. 1995) (finding probable cause for arrest where plaintiff refused to follow officer's order to leave her vehicle).

The Second Circuit has recognized the government's duty to keep public spaces safe and free of congestion as one of significant interest. <u>Marcavage v. City of New York</u>, 689 F.3d 98, 104 (2d Cir. 2012) ("Government certainly has a significant interest in keeping its public spaces safe and free of congestion.") (*quoting* <u>Bery v. City of New York</u>, 97 F.3d 689, 697 (2d Cir. 1996)); accord <u>Mastrovincenzo v. City of New York</u>, 435 F.3d 78, 100 (2d Cir. 2006) ("[R]educing sidewalk and street congestion in a city with eight million inhabitants[] constitutes[s] [a] significant governmental interest[]…") (internal quotation marks omitted); <u>see also</u> <u>Concerned Jewish Youth v. McGuire</u>, 621 F.2d 471, 478 (2d Cir. 1980) (where the Court found that the interests of residents, visitors and workers must be balanced with that of protestors). Due to the strong interest the City of New York has in maintaining order during mass demonstrations, officers should not be forced to wait for congestion to arise before parameters are put in place to prevent it. Accordingly, because the dispersal order served an important purpose, and cannot be called arbitrary, the dispersal order was lawful. <u>Crenshaw v. City of Mount Vernon</u>, 372 F. App'x. 202, 206 (2d Cir. 2010) (summary order) (noting that under New York's disorderly conduct statute, an order to disperse is lawful unless the order was purely arbitrary and not calculated in any way to promote the public order.) (internal citation and quotation omitted).

Furthermore, while plaintiff states in a conclusory manner that the dispersal orders were, without more, "unlawful," the Complaint does not set forth facts to support such an inference. <u>See</u> Compl., at ¶¶ 2, 31. The Second Circuit has found assertions that lack any factual foundation insufficient to defeat a motion to dismiss because they amounted to mere conclusory

allegations "masquerading as factual conclusions." Jackson v. Cnyt. of Rockland, 450 Fed. Appx. 15, 19 (2d Cir. 2011) (*citing* Kirch v. Liberty Media Corp., 449 F.3d 388, 398 (2d Cir. 2006)) (dismissing § 1983 false arrest claim because the complaint's allegations were merely conclusory and generally lacked a factual foundation) (*quoting* Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d. Cir.2002)). Plaintiff must plead sufficient facts to allow the Court to infer that the dispersal order was unlawful. Savino v. City of New York, 331 F.3d 63, 75 (2d Cir. 2003). Because plaintiff has failed to plead any facts supporting allegations that the dispersal orders were unlawful, and only admitted to having remained on the sidewalk after officers gave dispersal orders to clear the sidewalk, his subsequent arrest on the sidewalk was lawful. See Compl., at ¶¶ 15, 35-36 (emphasis supplied).

The totality of the circumstances as alleged in plaintiff's Complaint and as shown in plaintiff's exhibits all add up to suggest that Deputy Inspector Winski and Lieutenant Viviano had probable cause to believe plaintiff's conduct violated §§ 240.20(5) & (6), as well as § 195.05. Accordingly, the false arrest claim must fail.

## B. PLAINTIFF FAILS TO STATE A PLAUSIBLE FIRST AMENDMENT RETALIATION CLAIM

Plaintiff appears to allege a First Amendment retaliation claim against the Defendants. See Compl., at ¶¶ 1, 15-17, 66-67, 79-80. The Complaint alleges that Deputy Inspector Winski and Lieutenant Viviano approached and arrested plaintiff and criminal charges were maliciously initiated by Defendants against plaintiff. Id. at ¶¶ 37-39, 66-67. Insofar as the Court construes the Complaint to plead such a claim, the First Amendment retaliation claim must be readily dismissed because, as discussed above, probable cause existed for plaintiff's lawful arrest. Probable cause is a complete defense to a claim of First Amendment retaliation. Fabrikant v. French, 691 F.3d 193, 215-216 (2d Cir. 2012) (affirming dismissal of First

Amendment retaliation claim where probable cause existed); Papineau v. Parmley, 465 F.3d 46, 59 (2d Cir. 2006) ("One would not be justified in ignoring the familiar red light because this was thought to be a means of social protest.") (quotations omitted).

Moreover, the purported retaliation claim must be dismissed because the Complaint does not sufficiently plead the second element of such a claim, that is, defendants' actions were motivated or substantially caused by his exercise of that right. Kuck v. Danaher, 600 F.3d 159, 168, (2d Cir. 2010); Santulli v. Russelo, 519 Fed App'x. 706, 709 (2d Cir. 2013). Here, the Complaint does not allege facts that plausibly suggest that Deputy Inspector Winski and/or Lieutenant Viviano alleged actions were motivated by plaintiff's participation as a protestor or an observer of an arrest. On the contrary, the facts show otherwise. As discussed above, the facts show that plaintiff and many others were and did participate in the protest and plaintiff was only arrested after disobeying lawful dispersal orders. See Compl., at ¶¶ 15, 17.

The instant claim must be dismissed because the facts do not support a plausible inference of a First Amendment retaliation claim, and in the alternative, as discussed in Point II below, the officers should be granted qualified immunity.

C. **PLAINTIFF FAILS TO ALLEGE A PLAUSIBLE EXCESSIVE FORCE CLAIM**

In order to set forth a claim for excessive force, a plaintiff must establish "through evidence, that the 'alleged use of force is objectively sufficiently serious or harmful enough to be actionable.'" Rincon v. City of New York, 03 Civ. 8276 (LAP), 2005 U.S. Dist. LEXIS 4335, *11 (S.D.N.Y. 2005) (citing United States v. Walsh, 194 F.3d 37, 50 (2d Cir. 1999)). But, "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Graham v. Connor, 490 U.S. 386, 397 (1989) (citing Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973))."The right to make an arrest carries with it the

right to use some degree of physical coercion as long as the force used is reasonable based on the perception of the arresting officer at the time of arrest. Faruki v. City of New York, 2012 U.S. Dist. Lexis 47310, *17 (S.D.N.Y. 2012) (citing Kerman v. City of New York, 261 F.3d 229, 239 (2d Cir. 2001)). The Second Circuit has been clear that minimal injuries also speak to the reasonableness of force used. Tracy v. Freshwater, 623 F.3d. 90, 97 (2d Cir. 2010) (Striking multiple times with a metal flashlight in the course of a hand-to-hand struggle is subject to qualified immunity, even where plaintiff claims he was not resisting). Therefore, where an arrestee suffers *de minimis* injuries, and/or fails to provide evidence of any alleged injuries, an excessive force claim must fail. Esmont v. City of New York, 371 F.Supp. 2d 202, 214 (E.D.N.Y. 2005). As a result, "a *de minimis* use of force will rarely suffice to state a Constitutional claim." Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993).

Here, the Complaint alleges that when Deputy Inspector Winski arrested plaintiff he used excessive force by placing plaintiff's arm behind his back and raising it to his shoulder blades. See Compl., at ¶¶ 37-38. The Complaint is devoid of facts that would allow the Court to infer that the Defendants' purported actions of placing plaintiff's arm behind his back and raising it to his shoulder blades while trying to effectuate a lawful arrest was objectively unreasonable or constituted more than a *de minimis* use of force.

Because this claim amounts to at best, minimal force with no injuries, it is insufficient to state a plausible Fourth Amendment claim. "The Second Circuit has noted its agreement with other circuits that "some degree of injury is ordinarily required to state a claim…" Benjamin v. Flores, 11-CV-4216 (ARR), 2012 U.S. Dist. LEXIS 152248, at * 9 (E.D.N.Y. Oct. 23, 2012) (holding plaintiff's complaint is insufficient to plausibly allege Fourteenth Amendment claim because it failed to allege an injury) (*citing* Iqbal, 556 U.S.

at 678).  To succeed on an excessive force claim, "a plaintiff generally must prove he sustained some injury . . . ." Ragland v. City of Mount Vernon, 11 Civ. 1317 (VB),  2013 U.S. Dist. LEXIS 114945, at *14 (S.D.N.Y. July 12, 2013) (*citing* McAllister v. N.Y.C. Police Dep't, 49 F. Supp. 2d 688, 699 (S.D.N.Y. 1999)). "Courts in this District have routinely dismissed excessive force claims where the plaintiff has not alleged any physical injuries."  Roundtree v. City of New York, 778 F. Supp. 614, 622 (E.D.N.Y. 1991) (granting motion to dismiss excessive force claims where arresting officer pushed plaintiff into a patrol car causing him emotional pain and suffering; "to conclude that a 'push' that does not cause the slightest of physical injuries to the plaintiff is nonetheless an actionable use of excessive force would be to hold that *any* physical contact by an arresting officer with the arrested person is actionable . . . [and] would transform the constitutional wrong of excessive force in arrest into the common law tort of battery").

Moreover, plaintiff alleges no injury. Courts in this District have routinely dismissed excessive force claims where the plaintiff alleged that he was thrown to the ground, but did not allege any physical injuries. See Acosta v. City of N.Y., 11 Civ. 856 (KBF), 2012 U.S. Dist. LEXIS 60460 (S.D.N.Y. Apr. 26, 2012) (dismissing an excessive force claim where the plaintiff alleged that he was punched in the chest and thrown to the ground face first, but did not allege any specific physical injury); Wims v. N.Y.C. Police Dep't, No. 10 Civ. 6128 (PKC), 2011 U.S. Dist. LEXIS 78641 (S.D.N.Y. July 20, 2011) (dismissing an excessive force claim where the plaintiff alleged that he was "thrown flat on his face unto the filthy ground" (alteration omitted)). Hence, for the foregoing reasons the excessive force claim must fail.

### D.  THE PURPORTED MALICIOUS PROSECUTION CLAIM FAILS

The Complaint appears to allege a malicious prosecution claim by way of pleading that Deputy Inspector Winski and/or Lieutenant Viviano somehow violated plaintiff's

"right not to be deprived of liberty with due process of the law" and caused knowingly false criminal charges to be filed against plaintiff. See Compl., at ¶¶ 65-67. To the extent plaintiff alleges a malicious prosecution claim, that claim fails as there was probable cause for plaintiff's arrest and subsequent prosecution. In order to state a claim for malicious prosecution, a plaintiff must show "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." Murphy v. Lynn, 118 F.3d 938, 947 (2d Cir. 1997) (citation omitted). The existence of probable cause is a complete defense to claims for malicious prosecution. Jaegly v. Couch, 439 F.3d 149, 152 (2d Cir. 2006); Manganiello v. City of New York, 612 F.3d 149, 161-162 (2d Cir. 2010).

"In order for probable cause to dissipate, the groundless nature of the charges must be made apparent by the discovery of some intervening fact." Lowth v. Town of Cheektowaga, 82 F.3d 563, 571 (2d Cir. 1996). As discussed above, there was sufficient probable cause to support plaintiff's arrest, and the record is devoid of any intervening facts or evidence discovered after the time of her arrest that would suggest that the charges against plaintiff were groundless.

In addition to plaintiff's failure to overcome the existence of probable cause, plaintiff cannot satisfy the remaining elements of a malicious prosecution claim. It is widely recognized that plaintiff must plead the essential elements of a malicious prosecution claim. See Rothstein v. Carriere, 373 F.3d 275, 282 (2d Cir. 2004). Specifically, there are no plausible allegations tending to show that defendants Deputy Inspector Winski and/or Lieutenant Viviano initiated prosecution against plaintiff. See e.g. Rohman v. New York City

Transit Auth., 215 F.3d 208, 215-16 (2d Cir. 2000) ("One who does no more than disclose to a prosecutor all material information within his knowledge is not deemed to be the initiator of the [criminal] proceeding."). The Complaint does not sufficiently plead facts that support a plausible inference that the defendants Deputy Inspector Winski and/or Lieutenant Viviano made the decision to prosecute plaintiff, or that the decision to prosecute was based on any statements and/or representations by defendants Deputy Inspector Winski and/or Lieutenant Viviano.

With that in mind, the facts do not plausibly suggest that defendants Deputy Inspector Winski and/or Lieutenant Viviano were a proximate cause of the criminal prosecution against plaintiff. See Townes v. City of New York, 176 F.3d 138, 147 (2d Cir. 1999, *cert. denied*, 528 U.S. 964 (1999) ("It is well settled that the chain of causation between a[n] officer's [allegedly] unlawful arrest and a subsequent conviction and incarceration is broken by the intervening exercise of independent judgment," including by a prosecutor.); see also Williams v. City of New York, 02 Civ. 3693 (CBM), 2003 U.S. Dist. LEXIS 19078, at *19 (S.D.N.Y. Oct. 23, 2003) ("once a criminal defendant has been formally charged, the chain of causation between the officer's conduct and the claim of malicious prosecution is broken by the intervening actions of the prosecutor, thereby abolishing the officer's responsibility for the prosecution.") (*internal citations omitted*).

Finally, plaintiff also fails to plead facts sufficient to satisfy Iqbal that actual malice was undertaken by Deputy Inspector Winski and/or Lieutenant Viviano. Ashcroft v. Iqbal, *supra*, 129 S. Ct. at 1949-52. See Weaver v. City of New York, 09 Civ. 10262 (PKC), 2011 U.S. Dist. LEXIS 121322, at *19-20 (S.D.N.Y. Oct.18, 2011) (Castel, D.J.) (finding that the complaint's failure to allege actual malice to be a separate and independent basis to dismiss

the malicious prosecution claim); see also, Morales v. City of New York, 752 F.3d 234, 238 (2d Cir. 2014) (affirming dismissal of malicious prosecution claim where plaintiff failed to plead basic facts in support of such a claim, including any facts to support his allegation that "actual malice" was "a motivation for [the] defendant[s'] actions,") (*quoting* Manganiello v. City of New York, 612 F.3d 149, 160-61 (2d Cir. 2010); *citing* Locurto v. Safir, 264 F.3d 154, 169 (2d Cir. 2001)).  Accordingly, the malicious prosecution claim must be dismissed.

### E.  THE PURPORTED 14TH AMENDMENT DUE PROCESS CLAIM FAILS

The Complaint appears to allege that plaintiff was deprived of due process of law when unidentified Doe 7 stated to plaintiff that plaintiff would not be arraigned if he refused to submit to an iris scan. See Compl., at ¶ 45.  The Complaint alleges that plaintiff, nevertheless, refused the scan and was detained in custody for another fifteen hours before he was arraigned and released, without submitting to the iris scan. Id. at ¶¶ 46-48. In total, plaintiff contends that he was detained in custody for a total of 38 hours.  Id. at ¶¶ 44, 47.

As an initial matter, to the extent plaintiff alleges the Defendants deprived him of due process of law by virtue of the length of his pre-arraignment detention, that claim fails because his detention is deemed, as a matter of law, presumptively reasonable. Here, the Complaint states that plaintiff's pre-arraignment detention time totaled thirty-eight hours. "[A] jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of Gerstein v. Pugh, 420 U.S. 103 (1975).

The Second Circuit has defined prompt to generally mean within 48 hours of the warrantless arrest. See Lebowitz v. City of New York,  606 Fed. App'x. 17, 18 (2d Cir. 2015) (summary order)(finding any pre-arraignment delay the plaintiffs experienced was presumptively

reasonable where plaintiffs were arraigned within 48 hours); <u>Bryant v. City of New York</u>, 404 F.3d 128, 137 (2d Cir. 2005); *citing* <u>County of Riverside v. McLaughlin</u>, 500 U.S. 44 (1991); <u>Powell v. Nevada</u>, 511 U.S. 79 (1994). The Second Circuit has also found that a plaintiff is unable to rebut the prompt presumption where a plaintiff does not show the delay of arraignments was by "ill will," "delay for delay's sake," officers' attempts to gather more evidence against them, or any other "extraordinary circumstances". <u>See</u> <u>Lebowitz v. City of New York</u>, 606 Fed. App'x. *supra*, 18 (citations and internal quotations omitted) . Consequently, any due process argument related to plaintiff's length of pre-arraignment detention is without merit and must be dismissed, as it falls far short of exceeding the forty-eight hour promptness mark and fails to allege facts tending to show the type of ill will on behalf of Defendants as described *supra.* Accordingly, plaintiff's Fourteenth Amendment claim must be dismissed.

Plaintiff also appears to bring a claim under the Fourteenth Amendment, alleging that unidentified defendant Doe 7 deprived plaintiff of due process of law by prolonging the length of plaintiff's pre-arraignment detention for refusing to submit to an iris scan. It is well established that only state actions that are "arbitrary and outrageous", <u>Kuck v. Danaher</u>, 600 F.3d 159, 167 (2d Cir. 2010), and "shock the conscience," <u>Bryant v. City of New York</u>, 404 F.3d 128, 134 (2d Cir. 2005), will support a substantive due process claim. Plaintiff does not plead facts that support an inference of outrageous conduct towards him related to the iris scan, as the plaintiff does not plausibly allege statements that support the notion that plaintiff suffered a constitutionally violative treatment as a result of the iris scan program. In fact, plaintiff admits that even after he refused to submit to the iris scan, he was promptly arraigned and released. As discussed in the preceding paragraph, plaintiff's refusal to submit to the alleged iris scan did not

result in a material delay in plaintiff's arraignment. It bears reiteration that the complaint alleges plaintiff was arraigned well within forty-eight hours of his arrest, which is presumptively reasonable. See Bryant v. City of New York, *supra,* 404 F.3d at 137.

Finally, to the extent the Complaint alleges that the iris scans violated plaintiff's federal constitutional rights because its purported use was in contravention to NY CPL § 140.20(1), the Defendants respectfully urge the Court to summarily ignore any woefully misguided attempt to create a federally protected liberty interest *via* a state rule of criminal procedure. Federal law, not state regulations, determines the procedures necessary to protect that liberty interest. Indeed, the Second Circuit has held that a "state rule of criminal procedure, such as section 140.20(1), does not create a liberty interest that is entitled to protection under the federal Constitution." Brown v. City of New York, 14-CV-2611, 2015 U.S. App. LEXIS 14517, at *14-15 (2d Cir. Aug. 19, 2015) (finding state criminal procedural violation does not engender a constitutional violation); Watson v. City of New York, 92 F.3d 31, 38 (2d Cir. 1996) (holding that the mandatory language of the statute did not create a liberty interest protected by the Fourteenth Amendment); see Pugliese v. Nelson, 617 F.2d 916, 924 (2d Cir. 1980) ("'Although a Due Process Clause liberty interest may be grounded in state law that places substantive limits on the authority of state officials, no comparable entitlement can derive from a statute that merely establishes procedural protections.'") (*quotin*g Cofone v. Manson, 594 F.2d 934, 938 (2d Cir. 1979)). For the foregoing reasons, the due process claim under the Fourteenth Amendment fails.

### F. THE PURPORTED FABRICATION OF EVIDENCE CLAIM FAILS

The Complaint appears to allege a fabrication of evidence claim. See Compl., at ¶ 41-42. The Second Circuit has held that "[i]t is firmly established that a constitutional right

exists not to be deprived of liberty on the basis of false evidence fabricated by a government officer." Zahrey v. Coffey, 221 F.3d 342, 355 (2d Cir.2000). The Second Circuit's opinion in Zahrey makes clear that a § 1983 claim for damages based on fabrication of evidence lies where an officer's post-arrest fabrication of evidence results in a restraint on the plaintiffs liberty. Id. at 350 (holding that alleged due process violation must result in liberty deprivation).

Here, plaintiff alleges in a conclusory fashion in one of the 107 paragraphs contained in the Complaint that defendants Deputy Deputy Inspector Winski and Lieutenant Viviano filed falsified reports, which allegedly caused him to appear repeatedly in court to defend himself against the false charges. See Compl. at ¶ 42. As a threshold matter, plaintiff does not, because he cannot, state a plausible fabrication evidence claim, because the conclusory buzz words, i.e., falsified reports and repeated court appearances, are not supported by factual allegations sufficient to satisfy Iqbal. Ashcroft v. Iqbal, supra, 129 S. Ct. at 1949-52.

Moreover, false statements in arrest paperwork are not sufficient to plausibly allege a fabrication of evidence claim because those purported statements are inadmissible hearsay and would never reach a jury. See Horvath v. City of New York, No. 12-CV-6005 (RJD) (MDG), 2015 U.S. Dist. LEXIS 51029, at **15-17 (E.D.N.Y. Apr. 17, 2015); Brown v. City of New York, No. 14-CV-5372 (BMC), 2014 U.S. Dist. LEXIS 181736, at **3-11 (E.D.N.Y. Dec. 23, 2014) (dismissing plaintiff's denial of right to fair trial claim on a motion to dismiss pursuant to Rule 12(b)(6) and holding that allegedly false statements contained in arrest paperwork or criminal court complaints or told to the District Attorney's Office cannot be the basis for a denial of a right to fair trial by fabricated evidence claim because these statements are inadmissible hearsay and would never reach a jury); Blair v. City of New York, et al., No. 03-CV-1485 (SLT) (CLP), 2009 U.S. Dist. LEXIS 29300 at *30-32 (E.D.N.Y. Mar. 31,

2009).("Falsified or fabricated evidence alone, does not amount to a constitutional violation . . . . The constitutional violation occurs when such evidence is admitted at trial and impairs the truth-seeking function of the court proceedings." Id. at *31 (citing <u>Wray v. City of New York</u>, 490 F.3d 189, 193 (2d Cir. 2007)).   Consequently, the fabrication of evidence claim fails.

## DEFENDANTS DEPUTY INSPECTOR WINSKI AND LIEUTENANT VIVIANO ARE ENTITLED TO QUALIFIED IMMUNITY

Even assuming *arguendo* that probable cause is lacking, which we do not concede, plaintiff's claims for false arrest, excessive force and retaliation must be dismissed because defendants Deputy Inspector Winski and Lieutenant Viviano are entitled to qualified immunity.  "Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." <u>Garcia v. Doe</u>, 779 F.3d 84, 92 (2d Cir. 2014) Qualified immunity, when properly observed, grants government officials protection not only from liability, but from discovery.  "The basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation, including avoidance of disruptive discovery." <u>Iqbal</u>, *supra,* 129 S.Ct. at 1953 (calling the avoidance of discovery a serious and legitimate concern).  The Supreme Court has noted "[t]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" <u>Hunter v. Bryant</u>, 502 U.S. 224, 229 (1991) (*per curiam*) (*quoting* <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986)).

Qualified immunity is an objective test based on the knowledge possessed at the time, but without considering the subjective intent, motives or beliefs of the government official. <u>Garcia v. Doe</u>, 779 F.3d 92 ("The relevant, dispositive inquiry in determining whether a right is

clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.") (citations omitted).  In Garcia the court granted qualified immunity and dismissed claims that Occupy Wall Street protestors were given implied permission by officers to enter the roadway noting that officers would have been aware of warnings to disperse that were audible and ignored by at least some protestors.

Here, plaintiffs cannot pierce qualified immunity because the Complaint admits that numerous protestors, including the plaintiff, deliberately ignored dispersal orders and attempts to clear them from the sidewalk and officers, including Deputy Inspector Winski and Lieutenant Viviano reasonably could believe plaintiff's actions broke the law. Plaintiff cannot justify his illegal conduct by arguing that he could not hear the warnings, especially, where, as here, plaintiff admits in his complaint that officers gave dispersal orders to clear the sidewalk and attaches exhibits of Defendant Winski issuing the warning *via* a bullhorn. See Compl., at ¶ 30. Moreover, plaintiff cannot deny that the dispersal orders applied to him and others on the sidewalk. Nevertheless, instead of complying with the orders, plaintiff chose to ignore them and approach an arrest already in progress. Plaintiff's actions, therefore, made him subject to arrest under, *inter alia*, NY PL §240.20(6), for failing to obey a lawful order to disperse. Consequently, even if probable cause was lacking, officers were reasonable in believing that probable cause existed and are entitled to qualified immunity for his lawful arrest and prosecution.

Moreover, as explained more fully in Point I (C), *supra*, plaintiff fails to plead that he was subjected to excessive force or that he sustained any injuries as a result of the incident alleged in the Complaint, and the actions of Defendants were at least arguably reasonable and did not knowingly violate the law.  As a result Defendants Winski and Viviano must be granted qualified immunity on any purported excessive force.

Finally, and in the same vein, even if the Court finds that probable cause did not actually exist, defendants Deputy Inspector Winski and Lieutenant Viviano are entitled to qualified immunity on plaintiff's First Amendment retaliation claim because it was objectively reasonable for the officers to believe that probable cause existed. Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991). As discussed above, the officers gave dispersal orders and plaintiff ignored the orders and opted to approach an arrest on the sidewalk already in progress.

In sum, qualified immunity insulates defendants Deputy Inspector Winski and Lieutenant Viviano from liability on all of plaintiff's First and Fourth Amendment claims. Therefore, those claims must be dismissed.

## PLAINTIFF'S MUNICIPAL LIABILITY CLAIM FAILS AS A MATTER OF LAW

The Monell claim against the City of New York should be dismissed for failure to state a claim under 42 U.S.C. §1983 because plaintiff fails to allege facts that could establish that a municipal policy caused any constitutional violation. Monell v. Department of Social Services, 436 U.S. 658, 609-91 (1978). In order to establish municipal liability, plaintiff must demonstrate that an identified municipal policy or practice was the "moving force [behind] the constitutional violation." Id. at 694.

Plaintiff, in wholly conclusory fashion, alleges various "policy, practice or custom" of tolerating, permitting and being deliberately indifferent to unlawful seizures, stops, searches, arrests, and imprisonments; withholding the identifies of unidentified defendant officers from inclusion in police reports and court papers prepared before and during criminal proceedings instituted against plaintiff, failing to properly train or supervise officials and failing to inform supervisors of the need to train, screen, supervise or discipline, using public speech suppression. See Compl., at ¶¶ 96-106. However, these conclusory, boilerplate Monell

allegations are not sufficient to survive a motion to dismiss on the pleadings. "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1950 (2009)

Plaintiff's hollow Monell claim must be dismissed as insufficiently pled and implausible as a matter of law. Plaintiff has failed to present a theory of municipal liability and that failure is fatal. "[P]laintiff[] ha[s] neither plausibly alleged that the officers intended to discourage protesting nor explained why, had [he] intended to do so, they would have arrested only the protested who [violated the law]." Garcia v. Bloomberg, 865 F.Supp.2d 478, 492-93 (S.D.N.Y. 2012) (dismissing as implausible plaintiff's broad conspiratorial policy to allegedly deter Occupy Wall Street protests).

Plaintiff's theory of municipal liability remains undisclosed and is not alleged in the complaint. The failure to allege facts sufficient to present such a theory is fatal to plaintiff's Monell claim. Yet, even when looking to a clearly stated theory that as alleged is "consistent with an unlawful agreement," the Court must dismiss that same claim where it is "more likely explained by, lawful [] behavior." Higginbotham v. City of New York, 14 Civ. 8549 (PKC)(RLE), 2015 U.S. Dist. LEXIS 62227, at * 29-30 (S.D.N.Y. May 12, 2015) (PKC) (finding no Monell claim where, *inter alia,* the "allegation that 44 journalists were arrested is of course consistent with such a policy, but given a more likely explanation (journalists were simply arrested along with large numbers of regular protesters), it does not, standing alone, plausibly establish it."); see also Bell Atlantic v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1975 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 681-82 (2009) ("Taken as true, these allegations are consistent with [discrimination based on race, religion or national origin]. But given more

likely explanations they do not plausibly establish that purpose.") Here, plaintiff has failed to plausibly present the same and his municipal liability theory must be dismissed.

Nevertheless, for the sake of argument, assuming plaintiff had sufficiently pled Monell allegations, the claim still fails since, as set forth in Points I and II *supra*, plaintiff cannot establish that he was subjected to any constitutional deprivations by the police, including defendants Deputy Inspector Edward Winski and Lieutenant Frank Viviano. "[N]either Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978), nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm." Los Angeles v. Heller, 47 U.S. 796, 799 (1986). Accordingly, the purported claims of: false arrest, retaliation, malicious prosecution, excessive force, deprivation of due process and fabrication of evidence cannot serve as the predicate for a Monell claim.

Finally, to the extent that plaintiff purports to allege a municipal liability claim on the theory that defendants were deliberately indifferent, the claim fails to pass muster with equal force. "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Connick v. Thompson, 131 S. Ct. 1350, 1360 (2011) (citing Board of Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 410 (1997). From a pleading standpoint, demonstrating that a municipal official "disregarded a known or obvious consequence of his action" requires that plaintiff allege facts tending to show a pattern of similar constitutional violations by police officers and prosecutors that went unaddressed by the City. Id. ("A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for the purposes of failure to train."); see also Vasquez v. City of New York, 14 Civ. 491 (RMB),

2014 U.S. Dist. LEXIS 157259, at *33-*34 (S.D.N.Y. Nov. 6, 2014); Hendrix v. City of New York, 12-CV-5011 (ILG)(CLP), 2013 U.S. Dist. LEXIS 179259, at *21-22 (E.D.N.Y. Dec. 20, 2013).

Nowhere in the Complaint does plaintiff set forth facts demonstrating a pattern of constitutional violations similar to what he complains of. Instead, for example, he summarily alleges that "practices and customs of unlawful seizures, stops, searches, arrests and imprisonments by NYPD officers." Compl., at ¶ 98. Conclusory allegations such as these, however, do not meet the standard of Connick. Consequently, the Monell claim must fail.

## CONCLUSION

For the foregoing reasons defendants respectfully request that the Court dismiss plaintiff's Complaint, with prejudice, and grant such other and further relief as the Court deems just and proper.

Dated:      New York, New York
            August 21, 2015

ZACHARY CARTER
Corporation Counsel of the City of New York
*Attorney for Defendant*
100 Church Street
New York, New York 10007
(212) 356-2373

By: _____/s/_____

Andrew J. Lucas, Esq., Joy T. Anakhu, Esq.
Suzanne E. Aribakan, Esq.
Special Federal Litigation Division