| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK | 15 cv 1917 (PKC) |

-------------------------------------------------X

DALLAS PESOLA,

                   PLAINTIFF,

     vs.

CITY OF NEW YORK, et al.,

                  Defendants.

-------------------------------------------------X

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS OF DEFENDANTS CITY OF NEW YORK ET AL.
[Fed.R.Civ.P. Rule 12(b)(6)]

Dated: New York, New York
        September 18, 2015

                                      /s/
                                      PAUL L. MILLS, Esq. (pm0653)
                                      Park West Finance Branch
                                      PO Box 20141
                                      New York, New York 10025
                                      (646) 637-3693
                                      plm36@columbia.edu
                                      Attorney for PLAINTIFF

## TABLE OF CONTENTS

I. INTRODUCTORY STATEMENT ..................................................................................1

A. Defendants' Non-Compliant Motion ..........................................................................1

B. The Implications of the Current Civil Rights Era .......................................................1

C. Plaintiff's Claims.........................................................................................................3

II. USE OF EXCESSIVE FORCE......................................................................................4

III. FALSE ARREST ............................................................................................................5

IV. MUNICIPAL (*MONELL*) LIABILITY .........................................................................6

V. FIRST AMENDMENT VIOLATION............................................................................7

VI. INNER EYE SCAN........................................................................................................9

VII. MALICIOUS PROSECUTION ....................................................................................10

VIII. QUALIFIED IMMUNITY ...........................................................................................10

IX. CONCLUSION .............................................................................................................10

TABLE OF AUTHORITIES

**Cases**
*Carlo v. City of Chino*, 105 F.3d 493, 497-500 (9th Cir. 1997) .................................................. 10
*Garcia v. Bloomberg*, 865 F.Supp.2d 478 (2012) *aff'd Garcia v. Does* (2d Cir. No. 12-2634, 2014) ............................................................................................................................................. 8
*Gerstein v. Pugh*, 420 U.S. 103 (1974); 43 L Ed 2d 54, 95 S Ct 854 ............................................ 10
*Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986) ............................................................................................................................................... 2, 5
*Kentucky v. King*, 131 S.Ct. 1849 (2011) ...................................................................................... 6
*Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690-91 (1978) ............................. 3
*People v. Munafo*, 50 NY.2d 326, 331, 406 N.E.2d 780, 783 (1980) ............................................ 7
*Perry Educ. Ass'n v. Perry Educators' Ass'n*, 460 U.S. 37, 45 (1983) ......................................... 6
*Riverside v. McGlaughlin*, 500 U.S. 44, 52 (1991) ..................................................................... 10
*Rohman v. New York City, Transit Auth.*, 215 F.3d 208, 215-16 (2d Cir. 2000) .......................... 11
*Shuttlesworth v. City of Birmingham*, 382 U.S. 87, 90-91 (1965) ................................................ 7
*Vitek v. Jones*, 445 U.S. 480, 488, 100 S.Ct. 1254, 1261, 63 L.Ed.2d 552 (1980) ....................... 10

**Statutes**
New York CPL § 140.20 .................................................................................................................. 10
NYPL §195.05 ................................................................................................................................... 6
NYPL §240.20 (5) ............................................................................................................................. 6

**Other Authorities**
"Kelly Bans Choke Holds By Officers", New York Times, 11/24/93, http://www.nytimes.com/1993/11/24/nyregion/kelly-bans-choke-holds-by-officers.html ........ 4
*Suppressing Protest: Human Rights Violations in the U.S. Response to Occupy Wall Street,* The Global Justice Clinic (NYU School of Law) and the Walter Leitner International Human Rights Clinic at the Leitner Center for International Law and Justice (Fordham Law School) (July 25, 2012) [http://chrgj.org/wp-content/uploads/ 2012/10/suppressingprotest.pdf] ........... 2

**Rules**
Fed.R.Civ.P. Rule 12 (b)(6) ................................................................................................ 1, 3, 6, 7

I.  INTRODUCTORY STATEMENT

A.  Defendants' Non-Compliant Motion.  A defendant's Fed.R.Civ.P. Rule 12 (b)(6) motion for pretrial dismissal is intended to dispose of meritless claims prior to discovery, based solely on the pleadings, applying a strict standard presuming the truth of all internally-consistent complaint allegations, and drawing all inferences in favor of the plaintiff.  Fed.R.Civ.P. Rule 12 (b)(6).

In police misconduct civil rights cases like this one, however, there is a tendency among government defendants not to do so.  Thus, Defendants here purport to bring a Rule 12(b)(6) motion, drawing all inferences in their own favor; failing to address critical facts; and stating that Plaintiff has alleged Defendants' own fact conclusions.  Thus, for example, Plaintiff does not state he was a participant in the public demonstration at issue (Motion at 7); does not base his excessive force claim merely on the fact that police placed his arm behind his back and raised it to his shoulder blades (Motion at 8); does not "admit that he deliberately ignored dispersal orders" (Motion at 27).

They then proceed to distance themselves yet further from Rule 12 by their reliance on federal decisions arising from Rule 56 summary judgment dismissals, or from jury verdicts, rather than from Rule 12 decisions, which, of course, have markedly different analyses that naturally fail to serve Defendants' needs.[1]

The arguments offered in the motion under consideration here will probably be renewed by Defendants for consideration by a jury, where the difficult burdens of a pretrial motion do not apply. For now, the improperly offered arguments should be disregarded.[2]

---

[1] Defendants, *e.g.,* erroneously cite to a summary judgment standard, Motion at 10 (citing to summary judgment standard re "material facts that are in genuine dispute").

[2] Defendants' pre-motion filing letter signaled their intention to file such a non-compliant dismissal Motion, as Plaintiff noted in his opposition letter. The Court cannot forbid the filing of a non-compliant Motion, but there really should be some remedy to discourage future such filings, at least in this case.

B.  The Implications of the Current Civil Rights Era.  Plaintiff's action arises during a new era in civil rights litigation, with which Defendants have not yet come to grips. These are not old-style allegations of, e.g., someone claiming an isolated instance of a false arrest and use of excessive force on some street corner, with no evidence but that of the involved officers, the complaining arrestee, and perhaps a neighbor who caught a glimpse from an upstairs window or storefront doorway. These are multiple incidents during an hours-long period of well-documented 1st Amendment activity, with everything taking place in plain view of hundreds or thousands of spectators, media, fellow officers, and supervisory personnel, abundantly video-recorded by police and protesters and media, for broadcast on television and the internet where they were viewed by everyone on earth, including the City's policymakers.  Complaint at ¶¶21, 22, Complaint Exh. 3, 4, 7, 8, 12.

Consequently, while the lack of injury in an excessive force allegation is a factor for the Court to consider, *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)), so also is the riotous and violent behavior of the police as alleged in the complaint, and clearly depicted in attached exhibits.  No reasonable officer could believe that the photographed conduct was reasonable.  Complaint Exhs. 6-13.  A jury could reasonably conclude it was unlawful.  Defendants' Motion fails to address it.

What took place on such a massive, public, supervised scale was not an isolated incident, but part of a mass of coordinated police actions taken against hundreds of individuals in violation of the 1st Amendment, pursuant to the unlawful custom, practice and City-approved policy of the police, to confine demonstrators in narrow spaces, and then use that as a pretext to arrest them.  Complaint at ¶¶1-2, 24-29, 32, Complaint Exhs. 1-5.[3]  That is particularly the case given that

---

[3] *See, e.g., Suppressing Protest: Human Rights Violations in the U.S. Response to Occupy Wall Street,* The Global Justice Clinic (NYU School of Law) and the Walter Leitner International Human Rights Clinic at the Leitner Center

numerous supervisory personnel are themselves recorded supervising, and personally engaged in the coordinated procedure. Complaint Exhs. 1, 2, 6. *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690-91 (1978). Isolated incidents will not establish such a policy, however there is no requirement that numerous incidents occurring within minutes of each other, all consistent with the policy, fail to support government liability. Where dozens or hundreds of civilians are getting their rights violated by dozens or hundreds of police officers, in the same way, any one of those civilians has a cause of action based on the police department's unmistakable policy. Municipal liability does not hinge on the unlawful policy lasting forever, only that it was an approved department policy long enough to cause Plaintiff's harm. Plaintiff here alleges, at minimum, that there was an NYPD policy throughout the duration of incidents at issue here, known to and mandated by every supervisory officer present, and followed by every member of the NYPD present, including the Defendants, a policy that violated Plaintiff's rights.

C. Plaintiff's Claims

Plaintiff attended an Occupy Wall Street ("OWS") protest event, and, as punishment for observing protesters, though compliant with all lawful police orders and unresisting, was himself grabbed from behind, placed in a choke-hold, dragged down into the pavement, and arrested. Complaint at ¶¶ 36-38. Photographic evidence attached to the Complaint vividly depicts this. Complaint Exhs. 7-13. He brings this Section 1983 action, principally for Use of Excessive Force under the 4th Amendment in order to terminate and "chill" his 1st Amendment activity, but also for False Arrest, as well as under the 4th and 14th Amendments for his later retaliatory prolonged 38-hour pre-arraignment detention as punishment for refusing to submit to a police inner-eye scan.

---

for International Law and Justice (Fordham Law School) (July 25, 2012) [http://chrgj.org/wp-content/uploads/2012/10/suppressingprotest.pdf] at 110-119 (Chapter Seven: Public Space Closure—Strategies of Containment, Exclusion, and Dispersal)

A defendant's Fed.R.Civ.P. Rule 12 (b)(6) motion for dismissal is intended to dispose of meritless claims prior to discovery, based solely on the pleadings, applying a strict standard presuming the truth of all internally-consistent complaint allegations, and drawing all inferences in favor of the plaintiff.

Defendants here, however, purport to bring a Rule 12(b)(6) motion, but disregard Plaintiff's critical pleading as to his Excessive Force claim: they ignore the choke-hold. The words "choke hold" or, anything meaning "choke hold", do not appear in their brief at all.

Likewise, Plaintiff pleads, and attached photographs clearly illustrate, that Defendants congested the sidewalk themselves. At a certain point, they decided to end the lawful 1st Amendment activity, and, to create a pretext, ordered everybody into a narrow space. Then, they ordered dispersal and made arrests. These critical pleadings are also simply ignored by the Defendants.

Defendants then proceed to argue for dismissal of every claim, without drawing *any* inference in favor of the Plaintiff – not one. On the contrary, Defendants draw all inferences in their own favor.

## II. USE OF EXCESSIVE FORCE

Though not resisting arrest, Plaintiff suffered two forms of excessive force. One, a defendant grabbed him in an unnecessary and banned[4] choke-hold from behind and dragged him down to the pavement, without ever attempting to simply verbally order him to comply with arrest. Complaint at ¶37, Complaint Exhs. 7-12. Two, while he was still not resisting, police twisted his arm up behind his back until his hand was between his shoulder blades. Complaint at

---

[4] at least since 1993, unless the officer's life is in danger. "Kelly Bans Choke Holds By Officers", New York Times, 11/24/93, http://www.nytimes.com/1993/11/24/nyregion/kelly-bans-choke-holds-by-officers.html

4

¶38, Complaint Exh. 13.  The photo showing this maneuver is painful even to look at.  This too was unnecessary, an attempt to cause injury, and excessive.

Defendants offer no defense of the choke-hold.  This is a use of deadly force, from behind, on an unresisting – indeed, unsuspecting – person.  It's difficult to imagine what defense they could offer. So they just ignore it.

As to the attempt to break Plaintiff's arm or dislocate his shoulder, Defendants argue that it isn't excessive force because he somehow survived without injury.  No blood spilled, no fracture or sprain.  This argument should be rejected emphatically.  It contradicts the 4th Amendment requirement of reasonableness.  It sanctions torture.

Consequently, while the lack of injury in an excessive force allegation is a factor for the Court to consider, *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)), so also is the riotous and violent behavior of the police as alleged in the complaint, and clearly depicted in attached exhibits.  No reasonable officer could believe that the photographed conduct was reasonable. Complaint Exhs. 6-13.  A jury could reasonably conclude it was unlawful.  Defendants' Motion fails to address it.

III.  FALSE ARREST

Here again, Defendants fail to base their motion on the allegations of the complaint, instead, they ignore them.  Although a lawful dispersal order might issue where protesters were congregated and blocking the street or sidewalk, that does not apply where they are doing so in compliance with police orders.  Police may not terminate 1st Amendment activity in a traditional public forum on the basis of congestion and disorder that has been needlessly fabricated by the police.

Again, drawing all inferences in favor of the Plaintiff, the photographs attached as exhibits to the complaint plausibly support with photographic detail his allegations that the dispersal order arose from congestion created by the police themselves [Complaint Exhs. 1-6], among persons engaged in 1st Amendment activity on a public sidewalk – a traditional public forum. ¶¶15-16 (sidewalk, traditional public forum); 17 (among those engaged in 1st Amendment activity). *Perry Educ. Ass'n v. Perry Educators' Ass'n*, 460 U.S. 37, 45 (1983).

Drawing all inferences in favor of the Plaintiff, the order to the demonstrators to move into a confined space was unlawful. It interfered with their 1st Amendment activities in a traditional public forum. Fewer people could see them. They could no longer express themselves by dancing, or walking in front of observers, as they had without the order. The demonstration had gone on previously without the needs for such an order. No significant government interest was served thereby. It violated the 1st Amendment. *Perry, id.* Its foreseeable consequences could not be the basis for another order, canceling their 1st Amendment activities. *See, e.g., Kentucky v. King*, 131 S.Ct. 1849 (2011) (unlawful police conduct may not be relied on for resulting exigent circumstances exception to 4th Amendment warrant requirement).

Defendants fail to address the allegations or the photographs, despite the requirement that their motion do exactly that. Fed.R.Civ.P. Rule 12 (b)(6). They cite to no authority holding that when police unlawfully create congestion in a 1st Amendment activity, they can then lawfully terminate that activity with a dispersal order. This proposition would effectively repeal the 1st Amendment right to free speech in a traditional public forum.

More to the point, no reasonable police officer could believe that people, by obeying police orders to form a congested sidewalk mass, were recklessly or deliberately risking the

creation of a pedestrian traffic problem themselves, as required under state law. NYPL §240.20 (5), nor that by obeying police orders they were interfering with police administration, NYPL §195.05 ("OGA").

Furthermore, state law requires that such criminal conduct must deliberately or recklessly create a risk of a traffic problem for *other pedestrians*. No one was there but demonstrators, and those, like Plaintiff and police, observing the event. Complaint at ¶¶ 19, 20, Complaint Exhs. 1-5. These pleadings also are ignored by Defendants. Without a public to be inconvenienced, there can be no disorderly conduct charge, as every reasonable officer would know. *People v. Munafo*, 50 NY.2d 326, 331, 406 N.E.2d 780, 783 (1980).

This line of defense is like an early episode of the "Mad Men" television program, resurrecting a time in the 1950s when any police officer's barked command was deemed sufficient to legalize rounding up disobedient protesters and jailing them. A decade of 1960s landmark US Supreme court civil rights cases, and their federal and state progeny, such as *Kolender v. Lawson*, 461 U.S. 352, 357-58 (1983) and *Shuttlesworth v. City of Birmingham*, 382 U.S. 87, 90-91 (1965) bar these arguments. No reasonable officer could claim to be unaware of or confused about these bedrock legal principles.

IV.  MUNICIPAL LIABILITY

Plaintiff alleges, in detail, a policy by Defendant City of suppressing 1st Amendment activity, in repeated incidents during a limited period of time, by manufacturing congestion, then giving dispersal orders which are both unlawful, and which police have themselves made impossible to obey. Complaint at ¶¶1-2, 24-29, 32. These are depicted clearly in photographic exhibits attached to the complaint as to the incident. Complaint Exhs. 1-6. Because this is a 12(b)(6) motion, these allegations are taken as true. Fed.R.Civ.P. Rule 12 (b)(6). They are

7

abundant in number, involving hundreds of citizens whose rights were violated, by dozens of NYPD officers, in public and under the orders of supervisory officers.

Defendants fail to address the specific allegations of an official, written policy of Defendant City to conduct iris scan searches of all arrestees, even though such searches were warrantless, not based on probable cause, not ordered by a court, not authorized by law; and that there was an official policy of coercing such searches. Complaint at ¶¶ 5, 54-76. Municipal liability cannot be dismissed on this claim prior, at minimum, to a motion for summary judgment, and certainly not by ignoring the pleadings.

Defendants do not argue that Plaintiff's claims of an unconstitutional policy of concealing officer identities lacks plausibility or specificity, nor could they. It is reasonable and plausible to conclude that officer misconduct is a foreseeable consequence of a police policy of concealing the identities of those who violate the constitution, and that the violation of Plaintiff's rights under the 1st and 4th Amendments resulted from that policy. Complaint at ¶80.

V.  FIRST AMENDMENT VIOLATION

Defendants contend Plaintiff's 1st Amendment claims must be dismissed. As an initial matter, Plaintiff notes that The 1st Amendment not only protects lawful protest on public streets from police interference, it cherishes such expressive activity. It would not be an exaggeration to say that lawful street protest is what the United States of America is *all about*. *Garcia v. Bloomberg*, 865 F.Supp.2d 478 (2012) *aff'd Garcia v. Does* (2d Cir. No. 12-2634, 2014) ("What a huge debt this nation owes to its 'troublemakers.' From Thomas Paine to Martin Luther King, Jr., they have forced us to focus on problems we would prefer to downplay or ignore.") It is certainly what this lawsuit is all about.

Defendants argue that Plaintiff's 1st Amendment claim, that his false arrest, and the use of

excessive force, terminated and punished his observing and recording police activity, must be dismissed.

Their claim that his arrest and the use of force were lawful is addressed above.

They assert that there is no basis for connecting their conduct with his participation in a demonstration. But he does not allege that he was participating in the demonstration – that is their invention, not a part of the pleadings.

Plaintiff alleges he was observing an arrest, and attacked for doing so. Complaint at ¶¶ 17, 36-37, 79-80, 100, 102. The allegations are plausible, because they include detailed photographic evidence (all ignored by Defendants) that Plaintiff was standing in an unsuspecting posture: he is not bent down, moving away, pushing, he is a calm figure in a sea of chaotic figures, including police, standing straight up. Complaint Exhs. 7-9. There is no basis for a conclusion that he was given any warning or instruction prior to the attack from behind – or that he had any time or space in which to obey an order to move away from the` arrest he is observing. Then, despite the obvious failure to allow compliance, a supervisory officer drags him down to the ground with a choke-hold, where other officers twist his hand and arm to an impossible position, as he lies prone, with his other hand passively extended and in contact with the ground. Complaint Exhs. 11-13. Plaintiff is entitled to draw reasonable inferences from these photographs, attached to the complaint. He observed, and while observing, he was attacked from behind. Two plus two equals four. He was attacked for observing. Here again, Defendants fail to address the complaint allegations that bar dismissal, and fail to draw inferences in Plaintiff's favor. They do not deny that observing a police arrest is a protected 1st Amendment activity, nor could they.

## VI. INNER EYE SCAN

Plaintiff was held 38 hours before being arraigned, as punishment for his refusal to submit

to an iris scan. Complaint at ¶¶44-48. There's no secret about it – police told him that he would be punished in this fashion. Complaint at ¶45. The iris scan was an unnecessary procedure – he was ultimately arraigned without it, plus it was useless for preventing prisoners from escaping due to numerous defects in the system. Complaint at ¶¶ 46-49, 55-62.

Although any delays prior to arraignment are presumed lawful up to 48 hours, in a case like this, where clearly there was unnecessary, and therefore unlawful, delay, the 4th Amendment has been violated. *Gerstein v. Pugh*, 420 U.S. 103 (1974); 43 L Ed 2d 54, 95 S Ct 854; *Riverside v. McGlaughlin*, 500 U.S. 44, 52 (1991). Here again, Plaintiff's allegations showing unnecessary delay, and a threat of unlawful prolonged detention – the very basis for this claim – have been simply ignored by Defendants.[5]

Plaintiff alternatively pleads that because New York CPL § 140.20 tracks the 4th Amendment authorities cited above by requiring arraignment as soon as all necessary steps have been taken, this constituted a statutory 14th amendment liberty interest. *Vitek v. Jones*, 445 U.S. 480, 488, 100 S.Ct. 1254, 1261, 63 L.Ed.2d 552 (1980), see also *Carlo v. City of Chino*, 105 F.3d 493, 497-500 (9th Cir. 1997) (State official's failure to comply with state law providing for post-arrest telephone call gives rise to a liberty interest amounting to 14th Amendment procedural due process violation, which can be vindicated under 42 U.S.C. § 1983.). Some statutes do not create a 14th Amendment liberty interest. Here, where the procedure is not merely administrative, but serves and bolsters the 4th Amendment right, it does create a 14th Amendment liberty interest. *Carlo, id*. This is a *procedural*, not a *substantive* 14th Amendment due process claim, so Defendants' "shock the conscience", etc., authorities are irrelevant.

## VII. MALICIOUS PROSECUTION

All elements of a Section 1983 4th Amendment claim based on malicious prosecution

---

[5] There really should be some way to discourage this.

claim are properly pleaded. As explained above, there was no probable cause to arrest Plaintiff, hence no probable cause for prosecution. The Complaint specifically alleges that Defendants did not merely report truthfully – they filed false reports, foreseeably resulting in prosecution. Complaint at ¶15. This allegation is ignored by Defendants, and their citation to authority has no basis in the pleadings. *Rohman v. New York City, Transit Auth.*, 215 F.3d 208, 215-16 (2d Cir. 2000).

## VIII.  QUALIFIED IMMUNITY

Defendants also contend they are entitled to qualified immunity dismissal, because rights were not clearly established, they could reasonably have believed their conduct was lawful, etc.

As explained above, qualified immunity does not apply. No reasonable officer could have arrested, attacked, or punished plaintiff as alleged in the complaint, without knowing it to be unlawful.

## IX.  CONCLUSION

The motion should be denied in its entirety.

Respectfully submitted,

Dated: New York, New York

September 18, 2015

/s/
PAUL L. MILLS, Esq. (pm0653)
Park West Finance Branch
PO Box 20141
New York, New York 10025
(646) 637-3693
plm36@columbia.edu
Attorney for PLAINTIFF