UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
DALLAS PESOLA,

                        Plaintiff,                                 15-cv-1917 (PKC)(SN)

         -against-                                 MEMORANDUM
                                                                    AND ORDER

THE CITY OF NEW YORK, NYPD DEPUTY
INSPECTOR EDWARD WINSKI, NYPD
LIEUTENANT FRANK VIVIANO, Patrol Boro
Manhattan South Task Force, and NYPD
OFFICER DOES 1-7,

                        Defendants.
------------------------------------------------------------x
CASTEL, Senior District Judge:

        On March 17, 2012, Dallas Pesola was arrested in Zuccotti Park by officers of the New York City Police Department ("NYPD") during a gathering marking the six-month anniversary of the Occupy Wall Street protests. Plaintiff brought claims pursuant to 42 U.S.C. § 1983 against Deputy Inspector Edward Winski and Lieutenant Frank Viviano, who are employed by the NYPD, seven unnamed individual NYPD Officers (Does #1-7), and the City of New York (the "City"). By order dated March 30, 2015, the Court granted in part defendants' motion to dismiss. The claims remaining are an excessive force claim against Deputy Inspector Winski and a failure to intervene claim against Lieutenant Viviano. Winski and Viviano now move for summary judgment on these claims. (Dkt. 52.) For reasons to be explained, defendants' motion is granted.

BACKGROUND

        The following facts are undisputed unless noted. On March 17, 2012, the six-month anniversary of the Occupy Wall Street protests, plaintiff was present at Zuccotti Park in

Manhattan. (Pl.'s 56.1 Counterstatement, December 2, 2016, Dkt. 58 ("Pl.'s 56.1 CS") ¶ 1.) Plaintiff drove to Zuccotti Park, arriving around noon. (Pl.'s 56.1 CS ¶ 3.) He parked his truck on the northern edge of Zuccotti Park, on Liberty Street. (Pl.'s 56.1 CS ¶ 8.) Shortly after arriving plaintiff participated in a march, lasting approximately 25-30 minutes, after which he returned to Zuccotti Park. (Pl.'s 56.1 CS ¶¶ 5-6.) When plaintiff returned, Inspector Winski ordered plaintiff to move his truck because of its close proximity to a fire hydrant. (Pl.'s 56.1 CS ¶ 9.) Plaintiff moved his truck approximately a block away and returned to the park. (Pl.'s 56.1 CS ¶¶ 11-12.) Upon arriving at the northern edge of Zuccotti Park plaintiff walked through a crowd that had gathered and approached the police line. (Pl.'s 56.1 CS ¶¶ 12-14.) Within several seconds of plaintiff's arrival at the front of the police line Inspector Winski approached plaintiff, pointed his finger at plaintiff, and said something, although plaintiff could not hear what was said. (Pl.'s 56.1 CS ¶ 15.) Plaintiff became frightened, turned, and walked quickly away from Inspector Winski. (Pl.'s 56.1 CS ¶ 16.) Plaintiff in no way communicated to Inspector Winski his intentions before he turned and walked away. (Pl.'s 56.1 CS ¶ 18.)

It is at this point in the interaction that plaintiff's and defendants' versions of events diverge. Defendants assert that as plaintiff moved away from Inspector Winski, Inspector Winski tried to hold onto plaintiff and was pulled through the crowd. (Pl.'s 56.1 CS ¶ 21.) According to defendants, as plaintiff continued to move away from Inspector Winski and into the crowd, Inspector Winski "threw his arm around plaintiff's shoulder towards his neck and pulled him down to the ground." (Pl.'s 56.1 CS ¶ 22.)

It is undisputed that Inspector Winski's contact with plaintiff's neck lasted less than five seconds. (Pl.'s 56.1 CS ¶ 24.) During Inspector Winski's contact with plaintiff, plaintiff threw his arm up to relieve pressure on his neck, then pushed the Inspector's arm away

and held it back, but otherwise submitted to Inspector Winski and did not resist. (Pl.'s 56.1 CS ¶¶ 25-26.)

Plaintiff was "twisted and pulled to the ground" where he landed on his knees and the pads of his hands. (Pl.'s 56.1 CS ¶¶ 27-28.) Once plaintiff was on the ground Inspector Winski pushed plaintiff's head towards the ground. (Pl.'s 56.1 CS ¶ 29.) The parties dispute whether plaintiff "struggled to hold onto a water bottle and tucked his arms underneath when officers attempted to get his arms behind his back," (Pl.'s 56.1 CS ¶ 31), though they agree that once plaintiff's arms were pulled behind his back he was placed in handcuffs, (Pl.'s 56.1 CS ¶ 32.) During the course of the arrest, plaintiff's left arm was raised high above his shoulder blade, causing pain. (Pl.'s 56.1 CS ¶ 33.) Plaintiff did not inform any officer that he was in pain and walked to the police wagon under his own power. (Pl.'s 56.1 CS ¶¶ 34-35.) Plaintiff asserts that Lieutenant Viviano was "inches away" from Inspector Winski during his interaction with plaintiff. (Pl.'s Mem. in Opp., December 2, 2016, Dkt. 56 at 4.)

Plaintiff had no further interaction with Inspector Winski. (Pl.'s 56.1 CS ¶ 36.) Less than twenty seconds elapsed from when Inspector Winski approached plaintiff until he was taken to the ground. (Pl.'s 56.1 CS ¶ 37.) From the moment plaintiff first ran away from Inspector Winski until the moment he stood back up to go to a police vehicle was less than a minute. (Pl.'s 56.1 CS ¶ 39.)

Plaintiff never sought medical treatment as a result of this incident, and after one and a half weeks felt no residual pain or discomfort. (Pl.'s 56.1 CS ¶¶ 41-42.)

LEGAL STANDARD

On a motion for summary judgment, the Court views all evidence of record in the light most favorable to plaintiff as the non-moving party, and draws all reasonable inferences in plaintiff's favor. See Costello v. City of Burlington, 632 F.3d 41, 45 (2d Cir. 2011).

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed. R. Civ. P. A fact is material if it "might affect the outcome of the suit under the governing law," meaning that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 248 (1986). It is the initial burden of a movant on a summary judgment motion to come forward with evidence on each material element of his claim or defense, demonstrating that he is entitled to relief as a matter of law. Vt. Teddy Bear Co. v. 1–800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004). In raising a triable issue of fact, the non-movant carries only "a limited burden of production," but nevertheless "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that there is a genuine issue for trial.'" Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004) (quoting Aslanidis v. U.S. Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993)). In reviewing a motion for summary judgment, the court may scrutinize the record, and grant or deny summary judgment as the record warrants. Rule 56(c)(3), Fed. R. Civ. P. In the absence of any disputed material fact, summary judgment is appropriate. Rule 56(a), Fed. R. Civ. P.

DISCUSSION

Plaintiff claims that Inspector Winski used excessive force on him in effectuating his arrest. Specifically, plaintiff alleges that Inspector Winski's contact with his neck constituted

a "chokehold." (Pl.'s Mem. in Opp., December 2, 2016, Dkt. 56 at 7.) Plaintiff argues that this contact constitutes excessive force when used against someone who is being arrested for loitering and who the arresting officer has no reason to believe is a threat to anyone's safety. (Id. at 11-12.)

"A claim that law-enforcement officers used excessive force to effect a seizure is governed by the Fourth Amendment's 'reasonableness' standard." Plumhoff v. Rickard, 134 S. Ct. 2012, 2020 (2014) (citing Graham v. Connor, 490 U.S. 386 (1989)). To prevail, a plaintiff must show that officers' use of force was "'objectively [un]reasonable' in light of the facts and circumstances confronting them." Rogoz v. City of Hartford, 796 F.3d 236, 246 (2d Cir. 2015) (alteration in original) (quoting Graham, 490 U.S. at 397). In evaluating whether the amount of force used against a plaintiff was reasonable, the Court should consider: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Dancy v. McGinley, 843 F.3d 93, 116 (2d Cir. 2016) (quoting Graham, 490 U.S. at 386). "Given the fact-specific nature of the inquiry, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 123 (2d Cir. 2004).

Viewing the record in a light most favorable to plaintiff regarding the use of force on plaintiff, Inspector Winski is entitled to qualified immunity as a matter of law.

Second Circuit precedent dictates that:

A decision dismissing a claim based on qualified immunity at the summary judgment stage may only be granted when a court finds that an official has met his or her burden to demonstrate that no rational jury could conclude "(1) that the official violated a

statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct."

Abrams v. Dep't of Pub. Safety, 764 F.3d 244, 255 (2d Cir. 2014) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011)).  Under the second prong, "a [g]overnment official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right."  Id. (alteration in original).

The Supreme Court recently clarified the proper standard for the evaluation of qualified immunity at the summary judgment stage, holding that "clearly established law should not be defined at a high level of generality," but rather "must be particularized to the facts of the case."  White v. Pauly, 137 S. Ct. 548, 552 (2017) (internal quotation marks omitted).  In that case, the Supreme Court vacated the Tenth Circuit's judgment upholding the district court's denial of defendant police officer's motion for summary judgment on plaintiff's claims brought under section 1983 for excessive force in violation of plaintiff's Fourth Amendment rights.  See id. at 550, 553.  The Supreme Court found that the Tenth Circuit's qualified immunity analysis was defective because it "failed to identify a case where an officer acting under similar circumstances as [defendant] was held to have violated the Fourth Amendment."  Id. at 552.

In this case, plaintiff was taken to the ground, and once on the ground, his head was pushed down and he was eventually handcuffed.  An officer is well within his or her rights to use such force in effectuating an arrest; this is not disputed by the parties.  Rather, plaintiff argues that the *method* Inspector Winski used to subdue plaintiff—what plaintiff labels a "chokehold"—was excessive under the circumstances.  However, viewing the evidence in a light most favorable to plaintiff, and assuming, for the sake of argument, that the method by which

plaintiff was subdued constituted excessive force, a reasonable officer in Inspector Winski's position would not have known that such force violated any rights of plaintiff's.

Plaintiff argues that Inspector Winski engaged plaintiff in a "chokehold" by applying pressure to plaintiff's neck as plaintiff was taken to the ground by Inspector Winski. (Pl.'s Mem. in Opp., December 2, 2016, Dkt. 56 at 7.) It is undisputed that at least some pressure was applied to plaintiff's neck during the arrest. (Pl.'s 56.1 CS ¶ 24.) However, viewing the evidence, including plaintiff's testimony, and two videos—each depicting the incident from different angles—in a light most favorable to plaintiff, whatever force Inspector Winski actually applied to plaintiff's neck did not exceed the bounds of what a reasonable officer in the same situation would believe to be lawful. Inspector Winski is thus entitled to qualified immunity and plaintiff's claims against him are dismissed.

Plaintiff's failure to intervene claim against Lieutenant Viviano is also dismissed, for "[a] police officer cannot be held liable in damages for failure to intercede unless such failure permitted fellow officers to violate a suspect's 'clearly established statutory or constitutional rights' of which a reasonable person would have known." Ricciuti v. New York City Transit Auth., 124 F.3d 123, 129 (2d Cir. 1997) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). As described above, a reasonable officer would not have believed that Inspector Winski's actions violated any of plaintiff's rights. Even if a reasonable officer would have believed that Officer Winski's contact with plaintiff's neck violated plaintiff's clearly established rights, Lieutenant Viviano could not be held liable for a failure to intervene because he lacked the opportunity to do so. See O'Neill v. Krzeminski, 839 F.2d 9, 11 (2d Cir. 1988) (dismissing failure to intervene claim where defendant officer had "no realistic opportunity to attempt to prevent" the "three blows . . . struck in . . . rapid succession" by another officer). The parties

agree that Inspector Winski's contact with plaintiff's neck lasted less than five seconds, and it is beyond dispute that the immediate area in which the contact took place—where the boisterous crowd mixed with the police line—was chaotic. No reasonable jury could conclude that Lieutenant Viviano had time to intervene to prevent Inspector Winski from using a "chokehold" on plaintiff.

CONCLUSION

Defendants' motion for summary judgment (Dkt. 52) is GRANTED. The Clerk of the Court is directed to enter judgment for defendants.

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
August 31, 2017